1
2
3
4
5
6         **IN THE UNITED STATES DISTRICT COURT**
7             **FOR THE DISTRICT OF ARIZONA**
8
9   Iqbal Mohammad Muktadir,                No. CV-15-02009-PHX-ROS (BSB)
10                    Petitioner,            **REPORT AND**
11   v.                                      **RECOMMENDATION**
12   Michael J. Donahue,
13                    Respondent.
14

15           Petitioner Iqbal Mohammad Muktadir (Petitioner) has filed a Petition for Writ of
16   Habeas Corpus pursuant to 28 U.S.C. § 2241.   (Doc. 1.)   Petitioner argues that his
17   continued detention pending his removal to Bangladesh is unlawful under *Zadvydas v.*
18   *Davis*, 533 U.S. 678 (2001), and he seeks release from custody pending his removal.
19   Petitioner has also filed a supplement in support of his Petition.  (Doc. 9.)  Respondent
20   has filed responses to the Petition and supplement arguing that Petitioner is not entitled to
21   relief.  (Docs. 10, 12.)  Petitioner has not filed a reply and the time to do so has passed.
22   As set forth below, the Court recommends that the Petition be denied.

23   **I.      Factual and Procedural Background**

24           **A.      Immigration Proceedings**

25           Petitioner is a native and citizen of Bangladesh.  (Doc. 10, Ex. A.)  On October 23,
26   2013, Petitioner applied for admission to the United States at the Port of Entry at
27   Nogales, Arizona, requesting asylum.  (*Id.*)  That same day, the Department of Homeland
28   Security (DHS) issued Petitioner a Notice to Appear, charging him with violating Section

212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA). (Doc. 10, Ex. B.) Petitioner subsequently conceded the charge. (Doc. 10 at 2.)

On July 29, 2014, following a bond hearing, an Immigration Judge (IJ) found that Petitioner was a flight risk, denied his request for a change in custody status, and ordered that he be held without bond. (Doc. 10, Exs. C and D.) Petitioner appealed the IJ's custody decision to the Board of Immigration Appeals (BIA). (*Id.*, Ex. D.) The BIA found that the IJ correctly determined that Petitioner was a flight risk and that no amount of bond would assure his appearance at future hearings. (*Id.*) Therefore, on December 2, 2014, the BIA dismissed the appeal. (*Id.*)

On March 25, 2015, Petitioner filed a Request for Prosecutorial Discretion with the Immigrations and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO). (Doc. 10, Ex. E.) The ERO reviewed Petitioner's case for consideration to be released from detention, and issued a Notice of Denial of Request for Prosecutorial Discretion, which Petitioner received on April 21, 2015. (*Id.*)

On March 30, 2015, the IJ denied Petitioner's applications for asylum, withholding of removal, and for protection under Article III of the United Nations Convention against Torture, and ordered Petitioner removed from the United States to Bangladesh. (Doc. 10, Ex. F.) Petitioner waived appeal of the IJ's decision. (*Id.*)

On April 1, 2015, the ERO in Eloy, Arizona contacted the Consulate of Bangladesh to obtain travel documents for Petitioner and was informed that Petitioner would be required to complete a passport application and to provide copies of any identification documents. (Doc. 10, Ex. G at ¶ 4.) That same day, the ERO interviewed Petitioner to obtain information to complete forms for travel documents and helped him complete the required passport application. (*Id.* at ¶ 5.) On April 3, 2015, the ERO mailed the completed travel document application to the Consulate of Bangladesh. (*Id.* at ¶ 6.) From April 10, 2015 to October 2, 2015, the ERO requested updates from the Consulate of Bangladesh, and the ERO Headquarters Travel Documents Unit (HQTDU), while the travel document application was being processed. (*Id.* at ¶¶ 7-28.)

During the same period that the ERO was seeking travel documents, on June 25, 2015, it conducted a Post-Order Custody Review, and issued a Decision to Continue Detention.  (Doc. 10, Ex. H.)  However, a few months later, on October 27, 2015, ICE issued Petitioner a release notification, stating that he could be released under an order of supervisions pending his removal.  (Doc. 12, Ex. A, attachment A.)  On November 4, 2015, the ERO in Eloy served Petitioner with a copy of the release notification and order of supervision paperwork.   (Doc. 12, Ex. A at ¶ 5.)   On November 4, 2015, ERO Headquarters Removal and International Operations (HRIO) notified ERO in Eloy that they would conduct a further review of Petitioner's case.  (*Id.* at ¶ 6.)  On November 4, 2015, ERO HRIO revoked petitioner's order of supervision paperwork pursuant to 8 C.F.R. 241.13(i)(2).  .  (*Id.* at ¶ 7.)  On November 5, 2015, the Embassy of Bangladesh notified the government that it would issue Petitioner's travel documents.  (*Id.* at ¶ 8.)  On November 10, 2015, the government obtained Petitioner's travel documents.  (*Id.* at ¶ 9; Doc. 10, Ex. I.)  On November 18, 2015, ERO served Petitioner with the government's Decision to Continue Detention Letter.  (Doc. 12, Ex. A at ¶ 10.)  Respondent asserts that Petitioner's removal from the United States to Bangladesh is scheduled to occur in early January 2016.  (*Id.* at ¶ 11.)

**B.      Federal Petition for Writ of Habeas Corpus**

On October 7, 2015, Petitioner filed a Petition in this Court asserting that he has been detained for more than six months beyond the date his order of removal became final, in violation of his due process rights, as explained in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1.)  Petitioner seeks his immediate release from detention under an order of supervision.  (*Id.* at 9.)  Petitioner alleges that, because his removal is not significantly likely to occur in the reasonably foreseeable future, his continued detention is unlawful under *Zadvydas.*  (*Id.* at 4.)

On December 10, 2015, Respondent filed a response asserting that Petitioner is not entitled to relief because he has not shown that his removal is not substantially likely to occur in the reasonably foreseeable future.  (Doc. 10.)   Respondent further argues

because the government has obtained travel documents for Petitioner, his removal is imminent. (*Id.*)

## II.  Detention Following an Order of Removal

In his Petition, Petitioner asserts that his continued detention following the issuance of a final removal order violates due process, as discussed in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  (Doc. 1.)  Respondent contends that Petitioner has not established that he will not be removed in the reasonably foreseeable future and, therefore, Petitioner is not entitled to relief.  As set forth below, the Court concludes that Petitioner is not entitled to relief.

Several statutes provide for the detention of aliens under different circumstances. Section 236(c) of the INA, 8 U.S.C. § 1226, governs the initial apprehension and detention of aliens for purposes of determining whether an alien should be removed from the United States.  8 U.S.C. § 1226.  Section 1226(c) provides that, except in limited circumstances, aliens convicted of qualifying crimes must be detained pending removal proceedings. *Id.*

After the completion of removal proceedings, 8 U.S.C. § 1231(a) governs the detention, release, and removal of an alien who has been ordered removed.  *See Zadvydas*, 533 U.S. at 683 (referring to § 1231 as the "post-removal-period detention statute").   An alien must be detained during the removal period established in § 1231(a)(1).[1]  Section 1231(a)(6) grants the Attorney General the discretionary authority to detain certain classes of aliens "beyond" the removal period, or to release them subject to terms of supervision in § 1231(a)(3).  *Prieto-Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008).

---

[1]  Section 1231(a)(1)(B) provides that "the removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final; (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from custody or confinement."

### A.    Burden Shifting under *Zadvydas*

When an alien is found removable and a final order of removal had been entered, the Attorney General ordinarily secures removal of that alien during a ninety-day statutory "removal period" during which the alien is detained.   *See* 8 U.S.C. § 1231(a)(1)(A)-(B).   However, many aliens cannot be removed within the ninety-day period for a variety of reasons.   In *Zadvydas*, the Supreme Court held that the post-removal-period detention provision, 8 U.S.C. § 1231(a)(6), implicitly limits an alien's detention to a "period reasonably necessary to bring about that alien's removal" and does not permit indefinite detention.   *Zadvydas*, 533 U.S. at 689.   The Court recognized that the purpose of the statue was to guarantee the alien's presence at the time of his removal. *Id.* at 699.   However, the Due Process Clause applies to aliens who have entered the United States, and the Court found that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem."   *Id.* at 690.   The Court held that six months is a presumptively reasonable period of post-removal-order detention.   *Id.* at 701.

The Court established a burden-shifting analysis to determine whether a period of post-removal-order detention in excess of six months is permissible.   *Id.*   Under this analysis, the alien must first provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."   *Id.*   If the alien meets this burden, "the Government must respond with evidence sufficient to rebut that showing." *Id.*   "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."   *Id.*   The Court clarified that, under its holding, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."   *Id.*   Therefore, to state a claim under *Zadvydas*, the alien not only must show post-removal-order detention in excess of six months, but must also provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.   *Id.*; *See also Clark v. Martinez*, 543 U.S. 371 (2005).   The Court considers Petitioner's claim under this framework.

**B.      Petitioner's Detention Pending Removal**

Here, Petitioner was placed in removal proceedings when a Notice to Appear was issued on October 23, 2013.  (Doc. 10, Ex. A.)   On March 30, 2015, an IJ ordered Petitioner removed to Bangladesh.  (Doc. 10, Ex. F.)  Petitioner waived appeal of that decision.  (*Id.*)   Thus, the ninety-day statutory removal period set forth in 8 U.S.C. § 1231(a)(6) expired on June 30, 2015, and the presumptive six–month removal period expired on December 30, 2015.  *See* 8 U.S.C. § 1231(a)(1)(B).  When Petitioner filed his Petition, he had not yet been detained beyond the six-month removal period.  To date, Petitioner's detention exceeds the presumptive six-month period by approximately thirty days.

Petitioner asserts that it is unlikely he will be removed in the reasonably foreseeable future.  (Doc. 1 at 1, 4.)  He argues that the government has not submitted any evidence that it has obtained a travel document from Bangladesh.  (Doc. 9 at 2.)  Petitioner does not make any other allegations, other than his continued detention, to support his assertion that there is no significant likelihood of his removal in the reasonably foreseeable future.  Respondent, however, has provided evidence that the government obtained travel documents for Petitioner on November 10, 2015.  (Doc. 12, Ex. A, attachment C.)  Respondent further asserts that Petitioner's removal is imminent and should occur in January, 2015.  (*Id.*, Ex. A at ¶ 11.)

Any uncertainty as to Petitioner's exact removal date does not entitle him to relief.  In *Prieto-Romero v. Clark*, 534 F.3d 1053, 1064 (9th Cir. 2008), the Ninth Circuit declined to read *Zadvydas* to mean that an alien's removal was no longer "reasonably foreseeable" whenever some degree of uncertainty exists as to when his detention will conclude.   Here, Petitioner's post-removal detention is just over the six-month presumptively reasonable period.  The government has obtained a travel document for Petitioner, and Petitioner has not presented any evidence suggesting that there is no significant likelihood he will be removed in the foreseeable future.   Accordingly, Petitioner is not entitled to relief.

**III.    Conclusion**

Petitioner has been detained just over six months after his removal order became final.  He has not shown that his removal is not substantially likely to occur in the reasonably foreseeable future, and Respondent has established that Petitioner's removal is imminent.  *See Zadvydas*, 533 U.S. at 696.   Therefore, the Court concludes that Petitioner is not entitled to relief.

Accordingly,

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1), should not be filed until entry of the District Court's judgment.  The parties have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6 and 72.  The parties have fourteen days within which to file a response to the objections.  Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the District Court's acceptance of the Report and Recommendation without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Fed. R. Civ. P. 72.

Dated this 29th day of January, 2016.

Bridget S. Bade
United States Magistrate Judge